MR. FURNITURE WAREHOUSE, INC.,
Mr. Wholesale, Inc., and Howard
Cassett, Plaintiffs,

v.

BARCLAYS AMERICAN/COMMER-
CIAL, INC. and James Stenhouse,
Defendants.

No. 87–0620–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 19, 1988.

Sheldon Rosenberg, Michael Rothman, North Miami, Fla., for plaintiffs.

Byron G. Peterson, Kenneth B. Robinson, Greenberg, Traurig, Ft. Lauderdale, Fla., for defendants.

ORDER GRANTING PARTIAL
SUMMARY JUDGMENT

NESBITT, District Judge.

This cause is before the court on Defendants' Omnibus Motion for Summary Judgment filed on May 27, 1988. After Plaintiffs' responsive memorandum and Defendants' reply memorandum were filed, the court heard arguments on the motion on September 27, 1988.

*Facts*

The plaintiff corporations (collectively referred to as "Mr. Furniture") are Florida corporations engaged in the wholesale and retail furniture markets. Plaintiff Howard Cassett is president and majority shareholder of the Plaintiff corporations. Defendant Barclays American/Commercial, Inc. ("Barclays") is a North Carolina corporation in the business of commercial factoring; defendant James Stenhouse is Unit Manager of Barclays' Retail Credit and Collection Division.

Barclays' business is, in simple terms, purchasing accounts receivable from furniture manufacturers and from manufacturers in other industries. Barclays competes with financial institutions and other factors such as First Union Commercial Corporation and Manufacturers Hanover in this field. As a matter of custom and practice, furniture manufacturers ordinarily do not extend their own credit to purchasers; rather, the factor with whom the manufacturer has a contract extends its credit and assumes the risk of non-payment. In return for assuming the credit risks, the factor is entitled to decide which customers are credit-worthy. Barclays entered into contracts with several furniture manufacturers providing that Barclays would be the sole factor for their accounts. Nothing in those contracts prohibits the manufacturers from extending their own credit to purchasers; they are simply prohibited from dealing with other financial institutions during the term of the contract (usually one year).

In February 1986, Plaintiffs filed a complaint in state court alleging defamation, intentional infliction of emotional distress,

and conspiracy to defame. The case was removed to this court in March 1987 and four months later, the court dismissed the count alleging intentional infliction of emotional distress. Plaintiffs allege that Barclays refused to factor any Mr. Furniture accounts for any of its client manufacturers because Stenhouse harbors personal animosity toward Cassett and his family. Plaintiffs also allege that Stenhouse and Barclays conspired to defame and defamed Mr. Furniture's business reputation by telling furniture manufacturers that Mr. Furniture was not a good credit risk. Plaintiffs were forced to purchase merchandise with cash or not at all because credit was not available from those manufacturers who had contracts with Barclays.

In February 1988 the court permitted Plaintiffs to add two antitrust counts to their complaint. Count IV alleges that Barclays restrained trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), and Count V alleges that Barclays obtained and exercised monopoly power in violation of Section 2 of the Act, 15 U.S.C. § 2. Plaintiffs contend that Barclays unreasonably restrained trade in refusing to extend credit to Mr. Furniture, and that Barclays so dominates factoring in the furniture market that it is able to decide which wholesalers and retailers will be able to purchase furniture on credit.

In their omnibus motion for summary judgment, Defendants moved for full or partial summary judgment on each remaining count of the complaint. After oral argument, the court granted Defendants' motion as to the count alleging conspiracy to defame, denied the motion as to the defamation count, and deferred ruling on the antitrust claims. For the reasons stated below, the motion for summary judgment on both antitrust claims is granted.

### Alleged Antitrust Violations

Plaintiffs' Complaint and their Response to Defendants' Omnibus Motion for Summary Judgment present a jumble of antitrust buzzwords and theories. Plaintiffs allege that Barclays' conduct is equivalent to price-fixing, and is therefore a *per se* violation of the Sherman Act; that under a rule of reason analysis Barclays has violated the Act both through a "refusal to deal" and "exclusive dealing contracts"; that Barclays conspired with Stenhouse, its employee, to restrain trade; and that Barclays has willfully acquired and maintained monopoly power in the market Plaintiffs' define as "the furniture factoring industry." Defendants present numerous defenses that challenge the sufficiency of the facts alleged, such as the definition of the relevant market, and support the "reasonableness" of Barclays' contract. It is clear that where factual disputes such as these exist, a motion for summary judgment must be denied. *See* Fed.R.Civ.P. 56(c). The court concludes as a matter of law, however, that Plaintiffs do not have standing to assert any of these alleged antitrust violations.

The problem Plaintiffs have in formulating their antitrust claim and attaching a "label" to it is that the alleged misconduct does not fit any familiar antitrust pattern at first glance. Antitrust law is a highly specialized area combining law, economics, and social policy, and has seemingly developed by application of hair-splitting distinctions. The cases have generated terms of art peculiar to antitrust law such as vertical and horizontal restraints of trade, tying arrangements, and refusals to deal. Under a traditional antitrust analysis, the facts of this case do not present any sort of horizontal relationship; at most, and construing Plaintiffs' allegations liberally, the complaint alleges a vertical relationship between the parties, with Barclays distributing credit through furniture manufacturers to Mr. Furniture, the ultimate consumer of the credit.

Barclays argues that there are two nonoverlapping markets involved here: the market for credit and the market for furniture. Defendants conclude that because Plaintiffs are in the furniture manufacture/distribution chain, they do not have standing to complain of antitrust violations in the unrelated market of credit. The court does not agree that there are two separate markets in this case, but finds that the competitive injury Mr. Furniture alleges is too remote from any possible antitrust violation to confer standing to sue on these plaintiffs.

In the United States Supreme Court's most recent pronouncement on the still-developing doctrine of antitrust standing, the Court noted the similarity between that concept and the proximate cause analysis in tort law. *Associated General Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("*Associated General*"). The Court stated, "It is common ground that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." *Id.* at 536, 103 S.Ct. at 907. The Court outlined four factors that lower courts should use in addressing questions of antitrust standing: the nature of the plaintiff's injury; the causal connection or directness between the alleged antitrust violation and the injury; the potential for duplicative recovery or complex apportionment of damages; and the existence of more direct victims of the alleged antitrust violation who could bring the lawsuit. *Id.* at 537–45, 103 S.Ct. at 908–12.

Under the *Associated General* analysis, the court concludes that Mr. Furniture's injuries are too remote from the alleged violation, and are not of the kind the antitrust laws were enacted to prevent. Mr. Furniture alleges that Barclays' conduct has a detrimental effect on competition in the retail furniture market because the Mr. Furniture stores are unable to provide the same variety of merchandise as their competitors. The alleged antitrust violation, however, would affect competition in the market for credit. Although Mr. Furniture is a consumer of credit in this market, Plaintiffs do not allege that they are unable to obtain credit from other sources. In fact, Mr. Furniture has obtained credit from some furniture manufacturers and from other factors.

The fact that Barclays has entered into exclusive dealing contracts with some furniture manufacturers does not have a direct impact on the retail furniture market as Plaintiffs allege. There are other parties more directly injured by the alleged violation, such as the manufacturers themselves, who are forced to deal only with Barclays for the duration of the contract, or other financial institutions that may be willing to factor for a manufacturer on more favorable terms, but are precluded from doing so because of the Barclays contract. Not only are these parties better situated to claim injuries resulting from any adverse effect on competition in the credit market, but their existence also raises the possibility of duplicative damages if these plaintiffs were permitted to go forward.

Defendants contend that Plaintiffs' action is a complaint for defamation wearing an antitrust disguise. The court is inclined to agree. As Justice Kennedy has written, "Antitrust enforcement becomes divorced from antitrust policy when treble damages bear no relation to the anticompetitive effects of the illegal conduct. Such awards threaten to make every tort into a treble-damage bonanza. The antitrust laws were not intended as a balm for all wrongdoing in the business community." *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 751 (9th Cir.1984) (Kennedy, J., dissenting). Because the injuries claimed by Mr. Furniture are too remote from Barclays alleged anticompetitive activity, and because there are parties better situated to bring such an action if any antitrust violation has in fact occurred, the court concludes that plaintiffs do not have standing to maintain an action for antitrust injuries. Therefore, it is hereby

ORDERED and ADJUDGED that Defendants' Motion for Summary Judgment on Counts IV and V of the Amended/Supplemental Complaint is GRANTED. By order of this court from the bench on September 27, 1988, summary judgment on Count III of the Complaint was also GRANTED. Therefore, this case shall remain on the current trial calendar and shall proceed to jury trial on Count I. It is further

ORDERED and ADJUDGED that the parties must file a revised joint pretrial stipulation within ten (10) days from the date of entry of this order.

DONE and ORDERED.